THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD KEIDERLING                          :
                                            :
                    Plaintiff               :
        v.                                  :        3:12-CV-1972
                                            :        (JUDGE MARIANI)
RFM SERVICES, INC. and                      :
FRED MCILVENY                               :
                                            :
                    Defendants              :

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' Motion for Summary Judgment (Doc. 18) on

Plaintiff's claims of interference and retaliation under the Family and Medical Leave Act of

1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* For the reasons set forth below, the Court will

deny the motion.

### II. Undisputed Statement of Facts

Plaintiff was hired by RFM Services, Inc. in April of 2011 as a customer service

representative ("CSR"). (Defs.' Statement of Material Facts ("DSOF"), Doc. 19, at ¶ 1; Pl.'s

Statement of Material Facts ("PSOF"), Doc. 24, at ¶ 1). Despite being employed by RFM

Services, Plaintiff worked at Service Electric Cable, which is a client of RFM Services.

(DSOF at ¶ 2; PSOF at ¶ 2). Fred McIlvenny is RFM Services President. RFM Services

provides labor to cable companies which includes installations and as to Service Electric,

they supply CSRs, warehouse staff and internet support. (DSOF at ¶ 3; PSOF at ¶ 3). Karen

Raykovitz is office manager for Service Electric and supervised Plaintiff's day to day work. (DSOF at ¶ 6; PSOF at ¶ 6).

Plaintiff's job duties included answering the phones, speaking with customers, helping customers with cable and internet problems, speaking and working with technicians on the road and working with others in the office to resolve issues for customers throughout the different departments. (DSOF at ¶ 4; PSOF at ¶ 4). Plaintiff's hours were 8:30 a.m. - 5:00 p.m., Monday through Friday, at $14.00 per hour. (DSOF at ¶ 5; PSOF at ¶ 5).

As of April 2012, there were three CSRs working in the phone department with Plaintiff. (DSOF at ¶ 7; PSOF at ¶ 7). Plaintiff understood his employment with RFM Services to be "at-will" and he knew that Pennsylvania is an "at-will" employment state. (DSOF at ¶ 8; PSOF at ¶ 8). Plaintiff had never heard of the FMLA prior to filing this lawsuit. (DSOF at ¶ 9; PSOF at ¶ 9).

While employed by RFM Services, Plaintiff knew that RFM Services could terminate an employee for unacceptable attendance. (DSOF at ¶ 10; PSOF at ¶ 10). He also knew: if he was not at work there would be a problem if there was higher call volume; it was important for him to be present for work as scheduled; and his presence at work was important to RFM Services' and Service Electric's business. (DSOF at ¶ 11; PSOF at ¶ 11).

Despite knowing the importance of attendance, Plaintiff had a tendency to call off from work on the same day he was taking off. (DSOF at ¶ 12; PSOF at ¶ 12). If an RFM Services employee needed to call out from work at Service Electric, he would contact Ms.

Raykovitz and RFM Services. (DSOF at ¶ 24; PSOF at ¶ 24). If a CSR called off, his absence could cause insufficient support staff to meet customer demands and could lead to loss of potential customers. (DSOF at ¶¶ 13-15; PSOF at ¶¶ 13-15). Both Ms. Raykovitz and Mr. Mllvenny stressed the importance of attendance to Plaintiff and other employees. (DSOF at ¶¶ 18-19; PSOF at ¶¶ 18-19). Prior to the start of Plaintiff's tooth problems, Plaintiff was absent from work for six days in 2012.[1] (DSOF at ¶ 17; PSOF at ¶ 17).

On April 17th, Ms. Raykovitz sent an email to Mr. McIlvenny which stated: "Rick Keiderling called off again today. Day #6 this year. Said he is using 1 or 2 vacation days. Attached is his message." (DSOF at ¶ 20; PSOF at ¶ 20). Ms. Raykovitz was not happy with Plaintiff's attendance as of the April 17th email, and his attendance was becoming a problem. (DSOF at ¶ 21; PSOF at ¶ 21). Mr. McIlvenny's response to Ms. Raykovitz's email on April 17th said, "I am going to work on replacing him." (DSOF at ¶ 22; PSOF at ¶ 22).

For the purposes of this FMLA lawsuit, Plaintiff's tooth abscess began on April 26th, although he had received emergency treatment for a tooth abscess in March. (DSOF at ¶ 16; PSOF at ¶ 16; Amended Complaint, Doc. 10, at ¶ 18; Keiderling Dep., Doc. 19-1, Ex. A, at 178:5-22). On Thursday, April 26th, Plaintiff left work early at 3:30 p.m., and the reason given on his absence request form was "dentist." (DSOF at ¶ 25; PSOF at ¶ 25). Plaintiff called out on Friday, April 27th, and the reason given on his absence request form was "bad tooth ache abscess." (DSOF at ¶ 26; PSOF at ¶ 26). Plaintiff called out again on Monday,

---

[1] All the relevant facts of this case occurred during 2012, so the Court will omit the year from dates for the remainder of this opinion.

April 30th, for the reason, "toothache, going to dentist." (DSOF at ¶ 27; PSOF at ¶ 27). Finally, Plaintiff called out on Tuesday, May 1st, for the reason, "called out." (DSOF at ¶ 28; PSOF at ¶ 28).

On each day that Plaintiff called out, he left voice messages at Service Electric and RFM Services in the morning before the office staff arrived. (DSOF at ¶ 29; PSOF at ¶ 29). Additionally, each time Plaintiff called out, he called out for that particular day and not for more than one day at a time. (DSOF at ¶ 30; PSOF at ¶ 30).

Plaintiff returned to work on Wednesday, May 2nd. (DSOF at ¶ 31; PSOF at ¶ 31). Between April 26th and May 2nd, Plaintiff's medical treatment for the tooth included: Plaintiff's dentist calling in a prescription of penicillin for him on April 26th; Plaintiff seeing his family doctor, Dr. Janusz Wolanin, on April 27th, and being given a prescription for Clindamycin; Plaintiff going to the emergency room as an outpatient on April 29th, and receiving Dilaudid via IV, Clindamycin and Percocet; Plaintiff seeing his dentist on April 30th, and his tooth being drained. (DSOF at ¶ 32; PSOF at ¶ 32).

Between April 26th and May 2nd, Plaintiff was provided with two medical excuses; one from the Geisinger Wyoming Valley ER doctor and the other from Dr. Wolanin. (DSOF at ¶ 33; PSOF at ¶ 33). The Geisinger excuse was dated April 29th, and Plaintiff understood that excuse to have him out of work for Monday, April 30th only. (DSOF at ¶ 34; PSOF at ¶ 34). Dr. Wolanin's excuse was dated April 30th, and Plaintiff understood that excuse to have

him out of work on Tuesday, May 1st, with a "return to work" of May 2nd. (DSOF at ¶ 35; PSOF at ¶ 35).

Plaintiff never provided a medical excuse for Thursday, April 26th or Friday, April 27th. (DSOF at ¶ 36; PSOF at ¶ 36). None of Plaintiff's doctors told him that he should take additional time off work beyond Tuesday, May 1st, although Plaintiff testified that Dr. Wolanin offered to write him a note, if necessary. (DSOF at ¶ 37; PSOF at ¶ 37; Keiderling Dep. at 145:9-16). Despite having two doctors' notes, Plaintiff did not provide the medical excuses from Geisinger and Dr. Wolanin to RFM Services until he returned to work on Wednesday, May 2nd. (DSOF at ¶ 38; PSOF at ¶ 38).

On Friday, April 27th, Ms. Raykovitz sent an email to Mr. McIlvenny which stated "Rick Keiderling called off today. Attached is his voicemail. Kim is leaving ½ day, that only leaves Nicole in there for the afternoon. We need to find a reliable, responsible person." (DSOF at ¶ 39; PSOF at ¶ 39). Mr. McIlvenny's response to Ms. Raykovitz's email on April 27th, stated "I told you we should get rid of Kim and Rich a while ago but sometimes the devil you know is better than the devil you don't know. I am working on it. I'll take care of it. Thanks for your patience." (DSOF at ¶ 40; PSOF at ¶ 40).

Mr. McIlvenny was working and living in Western Pennsylvania in April 2012. (DSOF at ¶ 42; PSOF at ¶ 42). Plaintiff recalled two telephone conversations with Mr. McIlvenny during the period he was out from work: the first, a call on Friday, April 27th, which he described as "nice" and during which Plaintiff explained his tooth problem to Mr. McIlvenny;

the second, a call on Monday, April 30th, where Plaintiff described his emergency room visit and Mr. McIlvenny told him "you got to do what you got to do to get into work. Every day you're not there I don't make money." (DSOF at ¶ 43; PSOF at ¶ 43).

Mr. McIlvenny did not threaten to fire Plaintiff or take disciplinary action if he did not show up the next day for work. (DSOF at ¶ 45; PSOF at ¶ 45). On Wednesday, May 2nd, the day Plaintiff returned to work, Ms. Raykovitz sent an email to Mr. McIlvenny which stated: "Rick requested to leave early Thurs., 5/3 at 3PM dentist. I approved it. Total 9 days off excessive time even with dr's notes. He may have physical issues; however, he then needs to find a job that is flexible enough to meet his needs." (DSOF at ¶ 46; PSOF at ¶ 46). Ms. Raykovitz asked Mr. McIlvenny on May 3rd to remove Plaintiff from his posting at Service Electric for attendance reasons. (DSOF at ¶ 47; PSOF at ¶ 47).

On May 3rd, a meeting was held among Ms. Raykovitz, Larry Shewack and Joan Zelnik of Service Electric, and Mr. McIlvenny, and they decided that Plaintiff should be pulled from the Service Electric Office. (DSOF at ¶ 48; PSOF at ¶ 48). Mr. McIlvenny terminated Plaintiff on May 3rd, and the reason provided to Plaintiff was for excessive absences. (DSOF at ¶ 49; PSOF at ¶ 49). Mr. McIlvenny told Plaintiff the excessive absences were since January of 2012, not just the recent absences. (DSOF at ¶ 50; PSOF at ¶ 50). Plaintiff was aware of two other employees terminated for excessive absences while he worked for RFM Services. (DSOF at ¶ 59; PSOF at ¶ 59).

Between the period of April 26, 2012 and the time he was terminated on May 3, 2012, other than asking for leave for individual days, Plaintiff never: requested any application for extended leave; told anyone at RFM Services that he wished to take any extended leave; asked anyone at RFM Services whether some kind of extended leave was available. (DSOF at ¶ 54; PSOF at ¶ 54). Plaintiff described his being out of work during this period as "day to day." (DSOF at ¶ 55; PSOF at ¶ 55).

Plaintiff had emergency treatment of the tooth (possibly for an abscess) on March 15th, which included a prescription for antibiotics and at which time his dentist recommended a root canal. (DSOF at ¶ 56; PSOF at ¶ 56). Plaintiff did not elect to have the root canal and the tooth continued to bother him up until he left early from work on April 26th (the date he alleges as the beginning of his tooth problems for purpose of this lawsuit). (DSOF at ¶ 57; PSOF at ¶ 57). Plaintiff did not have the root canal treatment performed until July 2012. (DSOF at ¶ 58; PSOF at ¶ 58).

### III. Motion for Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990). "As to materiality, . . . [o]nly disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

## IV.  Analysis

Under the FMLA, an eligible employee[2] is entitled to take leave for a "serious health condition," which is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, . . . or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). In turn, "continuing treatment by a health care provider" is defined as "period of incapacity of more than three consecutive, full calendar days . . . that

---

[2] It is undisputed that Plaintiff is an eligible employee and Defendant RFM Services is a covered employer.

also involves . . . [t]reatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider." 29 C.F.R. § 825.115(a)(2). Incapacity means the "inability to work, . . . or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." *Id.* § 825.113(b).

The Third Circuit has held that "an employee may satisfy [his] burden of proving three days of incapacitation through a combination of expert medical and lay testimony." *Schaar v. Lehigh Valley Health Servs., Inc.*, 598 F.3d 156, 161 (3d Cir. 2010) ("Dr. Twaddle wrote that Schaar was incapacitated for two days because of her illness. When that expert medical opinion is combined with Schaar's lay testimony that she was incapacitated for two additional days," it created "a material issue of fact . . . as to whether Schaar suffered from a 'serious health condition.'").

Here, although Plaintiff did not have medical excuses in the form of doctor's notes for Thursday, April 26th and Friday, April 27th (DSOF at ¶ 36; PSOF at ¶ 36), he told his employer that he had pain from his "bad tooth ache abscess" or "dentist." (DSOF at ¶¶ 25-26; PSOF at ¶¶ 25-26). For Monday, April 30th and Tuesday, May 1st, however, Plaintiff did have two doctors' notes: one from Geisinger Wyoming Valley, and one from his family physician, Dr. Wolanin. (DSOF at ¶¶ 33-35; PSOF at ¶¶ 33-35). Thus, although the regulations state "[t]reatment does not include routine physical examinations, eye examinations, or dental examinations," 29 C.F.R. § 825.113(c), nevertheless "a material

issue of fact exists as to whether [Keiderling] suffered from a 'serious health condition.'" See

*Schaar*, 598 F.3d at 161. Defendants concede this point. (Letter to Court dated May 24,

2013, Doc. 22).

Count I: Interference under the FMLA

Once an employee invokes his rights under the FMLA, an employer may not

"interfere with, restrain, or deny the exercise of or attempt to exercise" these rights. 29

U.S.C. § 2615(a)(1). On an interference claim, a plaintiff "need not show that he was treated

differently than others. Further, the employer cannot justify its actions by establishing a

legitimate business purpose for its decision. An interference action is not about

discrimination, it is only about whether the employer provided the employee with the

entitlements guaranteed by the FMLA." *Callison v. City of Philadelphia*, 430 F.3d 117, 119-

20 (3d Cir. 2005). "[F]iring an employee for a valid request for FMLA leave may constitute

interference with the employee's FMLA rights as well as retaliation against the employee."

*Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

To invoke his FMLA rights, an employee must provide adequate notice of his need

for FMLA leave. 29 C.F.R. § 825.303. "When the approximate timing of the need for leave is

not foreseeable, an employee must provide notice to the employer as soon as practicable

under the facts and circumstances of the particular case." *Id.* § 825.303(a). He must

"provide sufficient information for an employer to reasonably determine whether the FMLA

may apply to the leave request." *Id.* § 825.303(b). "It is clear that an employee need not give

his employer a formal written request for anticipated leave." *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007). Even when the leave is foreseeable, an employee need provide only "verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA. . . ." 29 C.F.R. § 825.302(c). "While the FMLA does not require an employer to be clairvoyant, this does not mean that employees need to provide every detail necessary for the employer to verify if the FMLA applies." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir. 2012) (internal citations and quotation marks omitted).

> This conclusion is dictated by the language of 29 C.F.R. § 825.303(a), which provides that "where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying" (emphasis added). The regulations thus clearly envision situations where an employee can satisfy her notice obligation without providing enough detailed information for the employer to know if FMLA actually applies.

*Id.* Thus, "[i]n providing notice, the employee need not use any magic words." *Sarnowski*, 510 F.3d at 402.

> The critical question is how the information conveyed to the employer is reasonably interpreted. An employee who does not cite to the FMLA or provide the exact dates or duration of the leave requested nonetheless may have provided his employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA.

*Id.* "How the employee's notice is reasonably interpreted is generally a question of fact, not law." *Lichtenstein*, 691 F.3d at 303.

It is undisputed that Plaintiff never requested "extended" leave from Defendants. (DSOF at ¶¶ 54-55; PSOF at ¶¶ 54-55). It is also undisputed that when Plaintiff did request leave for his tooth abscess beginning on April 26, 2012 until May 2, 2012, he did so on a "day-to-day" basis. (DSOF at ¶¶ 30, 55; PSOF at ¶¶ 30, 55). Nevertheless, despite Defendants' arguments to the contrary, there is a genuine dispute of material fact as to whether Plaintiff's notice was given "as soon as practicable" and was "sufficient to make the employer aware that the employee needs FMLA-qualifying leave."

When Plaintiff left work early on Thursday, April 26th, and called out on Friday, April 27th, his employer might not have recognized the need for FMLA-qualifying leave. However, once Plaintiff called out on Monday, April 30th, and Tuesday, May 1st, *and* provided his employer with two medical excuses upon his return on Wednesday, May 2nd (DSOF at ¶ 38; PSOF at ¶ 38), the combination of extended treatment coupled with medical excuses might have been sufficient to put the employer on notice of potential FMLA-qualifying leave. "[W]here the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying." 29 C.F.R. § 825.303(a).

Because "[h]ow the employee's notice is reasonably interpreted is generally a question of fact, not law," *Lichtenstein*, 691 F.3d at 303, this Court is unwilling to find that Plaintiff's notice was inadequate as a matter of law. Assuming, then, that Plaintiff can establish his invocation of FMLA rights, Defendants' actions in terminating his employment

would have interfered with those rights. Therefore, the Court will deny Defendants' motion

for summary judgment as to Plaintiff's FMLA interference claim.

In addition, the Court acknowledges Defendants' argument that as early as March

15th, Plaintiff's dentist recommended Keiderling get a root canal, but Plaintiff did not get one

until July 2012. (DSOF at ¶¶ 56, 58; PSOF at ¶¶ 56, 58). The FMLA requires in cases "in

which the necessity for leave . . . is foreseeable based on planned medical treatment, the

employee shall make a reasonable effort to schedule the treatment so as not to disrupt

unduly the operations of the employer, . . ." 29 U.S.C. § 2612(e)(2)(A). At trial, Plaintiff will

have to explain how his efforts were reasonable so as not to disrupt unduly the operations

of RFM Services.

## Count II: Retaliation under the FMLA

Once an employee invokes his FMLA rights, an employer may not "discharge or in

any other manner discriminate against any individual for opposing any practice made

unlawful." 29 U.S.C. § 2615(a)(2). "To prevail on a retaliation claim under the FMLA, the

plaintiff must prove that (1) [he] invoked [his] right to FMLA-qualifying leave, (2) [he] suffered

an adverse employment decision, and (3) the adverse action was causally related to [his]

invocation of rights." *Lichtenstein*, 691 F.3d at 301-02. "[A]n employee does not need to

prove that invoking FMLA rights was the sole or most important factor upon which the

employer acted." *Id.* at 301.

Courts have borrowed from employment discrimination law to assess claims of

FMLA retaliation. Thus "claims based on circumstantial evidence have been assessed

under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), while claims based on direct evidence

have been assessed under the mixed-motive framework set forth in *Price Waterhouse v.*

*Hopkins*, 490 U.S. 228, 276–77, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (O'Connor, J.,

concurring)." *Id.* at 302.[3]

> Under the *McDonnell Douglas* framework, Lichtenstein has the initial burden
> of establishing a *prima facie* case. To do so, she must point to evidence in the
> record sufficient to create a genuine factual dispute about each of the three
> elements of her retaliation claim: (a) invocation of an FMLA right, (b)
> termination, and (c) causation. *See Erdman*, 582 F.3d at 508–09; *Conoshenti*,
> 364 F.3d at 146. If Lichtenstein can do so, the burden of production shifts to
> UPMC to "articulate some legitimate, nondiscriminatory reason" for its
> decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If UPMC meets
> this minimal burden, Lichtenstein "must point to some evidence, direct or
> circumstantial, from which a factfinder could reasonably . . . disbelieve
> [UPMC's] articulated legitimate reasons." *Fuentes v. Perskie*, 32 F.3d 759,
> 764 (3d Cir.1994).

*Id.* As stated above, there is a genuine issue of material fact as to whether Plaintiff provided

adequate notice "as soon as practicable" to his employer of his need for leave, that is,

whether he invoked his FMLA rights. It is undisputed that Plaintiff was terminated from his

employment on May 3, 2012. Therefore, Plaintiff must demonstrate that his invocation of his

FMLA rights was causally related to his termination.

---

[3] The Court will analyze Plaintiff's retaliation claim under the *McDonnell Douglas* framework instead of the *Price-Waterhouse framework. Id.* at 302 ("Although Lichtenstein calls on us to apply the mixed-motive framework to her retaliation claim, she readily survives summary judgment under the more taxing *McDonnell Douglas* standard.").

"To demonstrate a *prima facie* case of causation, [an employee] must point to evidence sufficient to create an inference that a causative link exists between [his] FMLA leave and her termination." *Lichtenstein*, 691 F.3d at 307. "When the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive,' this 'is sufficient standing alone to create an inference of causality and defeat summary judgment.'" *Id*. (quoting *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)).

Here, Keiderling was fired the day after returning from his fourth consecutive absence from work, which is sufficiently suggestive to create an inference of causation and defeat summary judgment. Thus, under *McDonnell Douglas*, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for its decision to terminate Plaintiff's employment.

Defendants' reason is that McIlvenny had decided as early as April 17th to fire Keiderling because of Plaintiff's excessive absenteeism. April 17th is before Keiderling took any leave that could be classified as FMLA-qualifying. Therefore, according to Defendants, the decision to fire Keiderling was wholly unrelated to any possible FMLA activity. "In order to demonstrate that [an employer's] proffered justification for terminating [him] is merely pretextual, [an employee] 'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve the employer's articulated legitimate reasons.'" *Lichtenstein*, 691 F.3d at 309-10 (quoting *Fuentes*, 32 F.3d at 764).

The Court finds that there is a genuine issue of material fact as to whether McIlvenny had decided to fire Keiderling as early as April 17th. Defendant McIlvenny claims that he had decided to terminate Plaintiff's employment on April 17th, before Plaintiff took any alleged FMLA leave. However, for various reasons, he "didn't get around to it" until later. (McIlvenny Dep., Doc. 25-3, Ex. B, at 58:6-21; 63:9-64:3). Ms. Raykovitz testified that she asked Defendant McIlvenny to remove Plaintiff from his posting at the meeting to terminate him on May 3rd. (Raykovitz Dep., Doc. 25-4, Ex. C, at 34:17-35:5). Also, Defendant McIlvenny confirmed there had been no plans in place to terminate Plaintiff on May 3rd prior to that meeting. (McIlvenny Dep. at 63:1-6).

There is also a dispute as to what Defendants' true reasons were for terminating Plaintiff's employment. The parties agree that the reason given for Plaintiff's termination was his excessive absenteeism. (DSOF at ¶¶ 49-50; PSOF at ¶¶ 49-50). They also agree that during the calendar year 2012, Plaintiff had six absences prior to April 17th and nine absences by May 3rd when he was terminated. (DSOF at ¶¶ 17, 46; PSOF at ¶¶ 17, 46). However, they dispute whether these excessive absences were the true reason for Plaintiff's termination. Plaintiff argues that he was fired immediately after he submitted multiple FMLA leave requests for his tooth abscess, thus raising a question of material fact whether it was the FMLA leave requests that caused Defendants to fire him, rather than his previous absences.

16

Thus, the Court finds Plaintiff has met the burden of showing pretext, requiring a jury to determine what were the true reasons for Plaintiff's termination. As such, the Court will deny Defendants' motion for summary judgment on Plaintiff's FMLA retaliation claim.

## V.  Conclusion

For the foregoing reasons, the Court will deny Defendants' Motion for Summary Judgment (Doc. 18). A separate Order follows.

Robert D. Mariani
United States District Judge